UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No.  **21-CV-471**
PASHKA BELLIA,

                Plaintiff,                              **COMPLAINT**

       - against -

                                                      **PLAINTIFF DEMANDS**
                                                      **A TRIAL BY JURY**

NASSAU CANDY DISTRIBUTORS, INC., LANCE
STIER, *Individually and In His Official Capacities*,

               Defendant.
------------------------------------------------------------------------X

      PASHKA BELLIA, ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against NASSAU CANDY DISTRIBUTORS, INC., alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. Plaintiff complaints pursuant to the discrimination and retaliation provisions of the discrimination provisions of **The Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq.* ("ADA"); **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated and retaliated against** by her employer on the basis of her disability and religion.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

3. The Court has supplemental jurisdiction over all state and county law claims pursuant to

28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5. Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated December 22, 2020, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8. At all relevant times herein, Plaintiff was and is a resident of the State of New York. She was and is a "person" and "employee" entitled to protection as defined by the ADA, Title VII, and the NYSHRL.

9. Plaintiff is a Roman Catholic woman.

10. At all relevant times herein, Defendant Nassau Candy Distributors, Inc. ("NASSAU CANDY") is a New York corporation, with its principal place of business 530 West John Street, Hicksville, New York 11801.

11. Defendant Lance Stier ("STIER") is a natural person residing in the State of New York and the president and owner of NASSAU CANDY. He is sued individually and in his capacity as owner, officer, and member of Defendant NASSAU CANDY. Defendant STIER had the authority to affect the terms and conditions of Plaintiff's employment.

12. Defendant STIER is a Jewish man.

13. At all relevant times herein, Defendant NASSAU CANDY "employs" fifteen and thus one or more "employees," and is thus an "employer" within the meaning of the ADA, Title VII and the NYSHRL.

## MATERIAL FACTS

14. On or about February 11, 2015, Plaintiff began working for Defendants as a Director of Product Development of Defendant NASSAU CANDY's subsidiary, Chocolate Inn/Taylor & Grant, earning an annual salary of $90,000.

15. Throughout Plaintiff's employment with Defendants, her performance met or exceeded Defendants' reasonable expectations. In fact, Plaintiff received positive annual performance evaluations coupled with promotions and annual raises.

16. In or around January of 2016, Plaintiff was promoted to Vice President of Product Development earning an annual salary of $125,000.

17. In or around February of 2017, Plaintiff received a raise of $5,000, increasing her annual salary to $130,000.

18. The following year in 2018, Plaintiff received another $5,000 raise, resulting in an annual salary of $135,000.

19. In March of 2019, Plaintiff was promoted to Vice President for NASSAU CANDY and its subsidiaries, earning an annual salary of $164,000, plus a year-end bonus of $3,500.

20. On or about September 9, 2019, Plaintiff was involved in a car accident in which she sustained severe shoulder and neck injuries. In an effort to manage her pain, Plaintiff began receiving cortisone injections in her shoulder and neck.

21. However, the cortisone injections did not alleviate her pain and the pain became unbearable

as she resumed her normal day-to-day activities. Specifically, Plaintiff experienced extreme pain by sitting for long periods of time in the same position.

22. On or about November 10, 2019, Plaintiff's doctor advised her that she had pinched nerves in her neck, which were causing pain and numbness in her arms. Plaintiff's doctor further advised her to begin physical therapy and to see a pain management doctor for epidural injections in her neck.

23. Plaintiff texted Defendant STIER and told him that she intended to take a leave of absence for 6-8 weeks. In response, Defendant STIER directed her to speak with MaryAnn Gustella, Vice President of Human Resources ("Gustella") regarding FMLA leave.

24. Later that day, Plaintiff explained to Gustella that she needed to attend physical therapy three (3) times per week as well as take time off to receive epidural injections. Plaintiff offered to work from home to accommodate her medical needs and at the same time perform her job duties.

25. Gustella approved Plaintiff's request and Plaintiff began working from home on November 11, 2019.

26. While working from home, Plaintiff was able to efficiently manage her department and complete projects in timely manner. Nevertheless, Defendant STIER pressed Plaintiff to return to the office, asking her several times per week, "when will you be back?" and stating, "I need you in the office." On each occasion, Plaintiff informed him that her shoulder was still in pain and it was extremely painful for her to drive.

27. On or about December 20, 2019, Plaintiff was shocked to discover that she did not receive her annual bonus. Immediately, Plaintiff raised her concerns with Defendant STIER and Gustella via e-mail. In response, Gustella e-mailed Plaintiff, "Nassau Candy does not issue

bonuses when an employee is on leave, albeit intermittent. Typically, the bonus is generated when the employee returns from FMLA leave."

28. On January 13, 2020, after constant pressure from Defendant STIER, Plaintiff returned to work in the office against medical advice. At the time, Plaintiff was still experiencing severe shoulder pain, resulting in extreme difficulty driving and sleeping. This pain was exacerbated by sitting at her desk at work and Plaintiff would noticeably wince in pain when simply attempting to move her mouse.

29. On January 28, 2020, on the advice of her doctor, Plaintiff met with a shoulder specialist, who recommended debridement surgery for her right shoulder. Following her consultation, Plaintiff e-mailed Gustella and Defendant STIER notifying them of her surgery date of February 11, 2020.

30. On February 11, 2020, Plaintiff underwent shoulder surgery. During the surgery, the surgeon discovered that Plaintiff's injury was more severe than previously thought and her rotator cuff was completely torn.

31. On February 17, 2020, Plaintiff had a follow up visit with the surgeon, who informed Plaintiff that her right arm would need to remain immobile for four (4) weeks and afterwards she would require physical therapy. Plaintiff sent Defendant STIER a doctor's note to this effect, indicating that she would be seen again on March 9, 2020.

32. Notwithstanding Plaintiff's inability to work and need for an accommodation, Defendant continued to require Plaintiff to perform work during this period. Additionally, despite the clear directive from her doctor, Plaintiff received constant antagonizing texts and calls from Defendant STIER regarding her return to work.

33. On or about February 19, 2020, Plaintiff finally received her year-end bonus. However,

        she was paid only 75% of her bonus.

34. On or March 9, 2020, following her doctor's appointment, Plaintiff advised Defendant STIER and Gustella via text that as per her doctor's orders she would need to remain out of work for an additional four (4) weeks to undergo physical therapy, but could return to work on April 7, 2020.

35. On March 31, 2020, before she returned to work, Gustella called Plaintiff to inform her that she was furloughed.

36. While Plaintiff remained on furlough, Defendants reassigned two (2) employees who previously reported to Plaintiff to report instead to a new employee, Debbie Gaspar ("Gaspar"), who was just hired at the beginning of March 2020.

37. On May 14, 2020, after a month and a half on furlough, Gustella called Plaintiff to inform her that Defendants wanted her to return to work. Gustella told Plaintiff that although she would return initially at a 60% salary, working three (3) days per week, she expected Plaintiff to return to her full salary in no time.

38. Plaintiff returned back to work on May 18, 2020, working remotely.

39. On June 15, 2020, Plaintiff remotely attended a meeting with Defendant STIER, Gasper, and Bari Perlmutter, Product Development Manager, to discuss new promotional products.

40. As the meeting began, Defendant STIER referred to Plaintiff as a "goyum," which Plaintiff knew was a derogatory term for a non-Jewish person, Plaintiff was shocked and replied "excuse me, what did you just call me?" Defendant STIER affirmatively responded and repeated, "goyum. You are a goyum." Immediately, Plaintiff firmly responded, "Excuse me but I take offense to that. Don't ever call me that again." Plaintiff's reply was met only with laughter and Defendant STIER again called Plaintiff a "goyum."

41. Plaintiff was completely humiliated by her exchange with Defendant STIER and was too stunned to respond any further.

42. Thereafter, in apparent retaliation for Plaintiff's objection to Defendant STIER's use of a slur, Defendant began to exclude Plaintiff and no longer included her on emails sent to the department. Instead, emails directed to Plaintiff's department copied Gaspar.

43. On July 21, 2020, Gustella called Plaintiff to tell Plaintiff that Defendants were reassigning Plaintiff to a different role at a 60% salary and Plaintiff's department would now report to Gaspar.

44. Plaintiff complained to Gustella about Defendants' treatment of her since her surgery and told Gustella that she could not accept the forced change of her duties and severe reduction in pay. Specifically, Plaintiff complained that she was being targeted on account of her medical leave. Plaintiff also complained about Defendant STIER's actions in calling her a "goyum" and how hurt and humiliated she felt as a result.

45. Gustella told Plaintiff that she would speak to Defendant STIER and get back to her.

46. On July 23, 2020, without any further commentary, Plaintiff received an e-mail from Gustella stating that Plaintiff had resigned and attached a release agreement, thereby effectively ending Plaintiff's employment.

47. As a result of Defendants' action, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff has further experienced severe emotional and physical distress.

49. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

50. As such, Plaintiff demands punitive damages against Defendants.

## AS A FIRST CAUSE OF ACTION
## <u>FOR DISCRIMINATION UNDER THE ADA</u>
## (AGAINST DEFENDANT NASSAU CANDY)

51. Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

52. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

53. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

54. Plaintiff's disability is an impairment that substantially limits one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA, including but not limited to, lifting, sleeping and performing manual tasks.

55. Plaintiff requested reasonable accommodations. Specifically, she requested to be permitted to work from home.

56. Defendant was aware of Plaintiff's disability and need for the accommodation.

57. Plaintiff is a qualified individual who could perform the essential functions of his employment with a reasonable accommodation as defined by § 12111(8) of the ADA.

58. Defendant did not make a good faith effort to accommodate Plaintiff's disability.

59. All the accommodations that Plaintiff requested were reasonable.

60. None of the accommodations that Plaintiff requested would have created undue hardship for Defendant.

61. Defendant failed to communicate with Plaintiff meaningfully and in good faith concerning her disability and requested accommodations.

62. Defendant discriminated against Plaintiff in violation of the ADA by refusing to accommodate her disability and terminating her employment because of her disability.

63. Defendant knowingly and intentionally discriminated against Plaintiff because of her disability.

64. Plaintiff suffered injuries as a result of Defendant's failure to reasonably accommodate her disability.

65. Defendant's failure to accommodate Plaintiff's disability was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

66. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when it refused to provide a reasonable accommodation for her disability.

**AS A SECOND CAUSE OF ACTION
<u>FOR RETALIATION UNDER THE ADA</u>
(AGAINST DEFENDANT NASSAU CANDY)**

67. Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

68. The ADA prohibits retaliation, interference, coercion, or intimidation against an employee who engages in protected activity.

69. 42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

70. Plaintiff engaged in protected activity when she asked Defendant for reasonable accommodations for her disability, including working from home.

71. As a direct result of Plaintiff's request for a reasonable accommodation, Defendant retaliated against Plaintiff by delaying and denying Plaintiff the full amount of year end bonus.

72. Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

73. Defendant's conduct was with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (AGAINST DEFENDANT NASSAU CANDY)

74. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75. 42 U.S.C. § 2000e-2(a) provides that

> It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]

76. As described above, Defendant discriminated against Plaintiff on the basis of her religion in violation of Title VII, by including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.  As a result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

77. As a result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

78. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (AGAINST DEFENDANT NASSAU CANDY)

79. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

80. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

81. As described above, Plaintiff engaged in protected activities, including making an internal complaint about Defendant's discrimination on the basis of religion.

82. As described above, after Plaintiff engaged in activity protected by Title VII, Defendant took adverse actions against Plaintiff by, *inter alia*, constructively terminating her employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

83. As a result of the retaliatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

84. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL
### (AGAINST ALL DEFENDANTS)

85. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

86. New York Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, **creed**,

>color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

87. As described above, Defendants discriminated against Plaintiff on the basis of her disability and religion in violation of the NYSHRL, by including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

88. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

89. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### AS A SIXTH CAUSE OF ACTION
### FOR RETALIATION UNDER THE NYSHRL
### (AGAINST ALL DEFENDANTS)

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

91. New York Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or

discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

92. As described above, Plaintiff engaged in protected activities, including requesting a reasonable accommodation and making an internal complaint regarding Defendants' discrimination based on Plaintiff's religion.

93. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, terminating her employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

94. As a result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

## JURY DEMAND

95. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, et seq., **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, *et seq.*, and the **New York State Human Rights Law**, New York State Executive Law, § 296 ("NYSHRL") in that Defendants discriminated and retaliated against Plaintiff on the basis of her disability and

religion;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
January 28, 2021

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: ____/s/_____
Joshua M. Friedman, Esq.
Joseph Myers, Esq.
*Attorneys for Plaintiff*
585 Stewart Ave, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901 - 2107
jfriedman@tpglaws.com
jmyers@tpglaws.com